# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| ANN ZARCZYNSKI and MEGAN VOEKS, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br> v. <br><br> MONARCH RECOVERY MGMT, INC., <br><br> Defendant. | Case No.: 20-cv-152 <br><br> **CLASS ACTION COMPLAINT** <br><br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION

2. The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3. Plaintiff Ann Zarczynski is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff Megan Voeks is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt incurred for personal, family, or household purposes.

6. Each Plaintiff is a "customer" as defined in the WCA, Wis. Stat. § 421.301, in that the debt arose from an agreement or series of agreements to defer payment.

7. Defendant Monarch Recovery Management, Inc. ("Monarch") is a foreign corporation with its principal place of business located at 3260 Tillman Drive, Suite 75, Bensalem, PA 19020.

8. Monarch is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. Monarch is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

10. Monarch is a debt collector as defined in 15 U.S.C. § 1692a. and Wis. Stat. § 427.103(3).

## FACTS

11. On or about April 3, 2019, Defendant mailed a debt collection letter to Plaintiff Zarczynski regarding an alleged debt owed to "U.S. BANK." A copy of this letter is attached to this Complaint as Exhibit A.

12. Upon information and belief, the alleged debt referenced in Exhibit A was incurred through the use of a credit card, used exclusively for personal, family, and household purposes.

13. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff Zarczynski inserted by computer.

14. Upon information and belief, Exhibit A is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

2

15. Upon information and belief, Exhibit A was the first written communication Defendant sent to Plaintiff Zarczynski regarding this alleged debt.

16. Upon information and belief, Plaintiff Zarczynski received Exhibit A within a few days of its mailing.

17. Upon receiving Exhibit A, Plaintiff Zarczynski did not recognize Monarch or know whether Monarch's efforts in connection with the collection of her alleged debt were legitimate.

18. Exhibit A contains language that largely reflects the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume that this debt is valid. If you notify this office in writing within 30 days from receipt of this notice that the debt, or any portion thereof, is disputed, this office will obtain verification of the debt or a copy of the judgment against the consumer and a copy of such verification or judgment and mail it to you. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

19. On or about May 8, 2019, Defendant mailed a debt collection letter to Plaintiff Voeks regarding an alleged debt owed to "SYNCHRONY BANK" in connection with a "Walmart Credit Card." A copy of this letter is attached to this Complaint as Exhibit B.

20. Upon information and belief, the alleged debt referenced in Exhibit B was incurred through the use of a credit card, used exclusively for personal, family, and household purposes.

21. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff Voeks inserted by computer.

22. Upon information and belief, Exhibit B is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

3

23. Upon information and belief, Exhibit B was the first written communication Defendant sent to Plaintiff Voeks regarding this alleged debt.

24. Upon information and belief, Plaintiff Voeks received Exhibit B within a few days of its mailing.

25. Upon receiving Exhibit B, Plaintiff Voeks did not recognize Monarch or know whether Monarchs efforts in connection with the collection of her alleged debt were legitimate.

26. Exhibit B contains language that largely reflects the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

> Unless you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume that this debt is valid. If you notify this office in writing within 30 days from receipt of this notice that the debt, or any portion thereof, is disputed, this office will obtain verification of the debt or a copy of the judgment against the consumer and a copy of such verification or judgment and mail it to you. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

27. The above language included in Exhibit A and Exhibit B is confusing and misleading to the unsophisticated consumer and does not adequately advise the consumer of their rights under the FDCPA.

28. The representation that Defendant will assume the debt is valid "unless you notify this office *in writing* within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof," is false, deceptive, and misleading to the unsophisticated consumer, and is inconsistent with the consumer's right to dispute the debt.

29. 15 U.S.C. § 1692g states:

> (a) Notice of debt; contents.
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall . . . send the consumer a written notice containing—
>
> …

4

> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector.
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector
>
> …
>
> (b) Disputed debts
>
> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed … the debt collector shall cease collection of the debt, or any portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment … and a copy of such verification or judgment … is mailed to the consumer by the debt collector.
>
> …
>
> Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt….

30. Although the consumer does not trigger verification of the debt unless they dispute the debt in writing, there is no requirement that the consumer dispute the debt *in writing* to avoid having the debt collector assume its validity. *See, e.g., O'Boyle v. GC Servs.*, No. 16-cv-1384, 2018 U.S. Dist. LEXIS 82991, at *8 (E.D. Wis. May 17, 2018) ("a dispute under § 1692g(a)(3) need not be in writing.") (citing *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 347 n.6 (7th Cir. 2018)); *see also Smith v. GC Servs. L.P.*, No. 16-cv-1897, 2017 U.S. Dist. LEXIS 93710, at *7-8 (S.D. Ind. June 19, 2017) (collecting cases and finding, "whereas Subsections 1692g(a)(4) and (a)(5) include a writing requirement, the text of the Subsection 1692g(a)(3) 'plainly does not.'") (quoting *Clark v. Absolute Collection Serv., Inc.*, 741 F.3d 487, 490 (4th Cir. 2014)).

31. For example, if a consumer notifies the debt collector that a debt is disputed by telephone, the debt collector cannot report the dispute to credit bureaus without the "disputed" flag. 15 U.S.C. § 1692e(8); *see, Evans*, 889 F.3d at 347 n.6 (citing *Sayles v. Advanced Recovery Sys., Inc.*, 865 F.3d 246, 249-50 (5th Cir. 2017); *Brady v. Credit Recovery Co., Inc.*, 160 F.3d 64, 66-67 (1st Cir. 1998)).

32. The representation that the consumer must dispute the debt in writing is false, deceptive, misleading, unfair, and inconsistent with the disclosure of the consumer's right to dispute the debt.

33. The practical effect of requiring written disputes is to discourage consumers from communicating disputes. *See Walters v. PDI Mgmt. Servs.*, No. 02-cv-1100, 2004 U.S. Dist. LEXIS 13972, at *17 (Apr. 6, 2004) ("subsection (a)(3) provides some protection to those consumers who dispute a debt but are unable to do so in writing, perhaps the very consumers who are more likely to be unsophisticated."); *Untershine v. Encore Receivable Mgmt.*, No. 18-cv-1484, 2019 U.S. Dist. LEXIS 134377, at *29 (E.D. Wis. Aug. 9, 2019) ("requiring disputes to be in writing would arguably undermine a purpose of the statute by making it more complicated and expensive for consumers to resolve what may be simple errors.").

34. For purposes of Plaintiffs' claim under 15 U.S.C. §§ 1692e and 1692e(10), Defendants' omission is a material viola'tion of the FDCPA. The false representation that a consumer cannot obtain any protections unless she disputes the debt in writing would discourage disputes from "the very consumers who are more likely to be unsophisticated." *Walters*, 2004 U.S. Dist. LEXIS 13972, at *17.

35.     Plaintiffs were confused and misled by Exhibit A and Exhibit B. The language in the letters described in paragraph 15, above, made Plaintiffs believe that they was required to dispute their debt in writing.

36.     The unsophisticated consumer would be confused and misled by Exhibit A and Exhibit B.

### *The FDCPA*

37.     Debt collection letters containing alleged misrepresentations of consumer's validation rights, inherently create the risk of the kinds of harm the FDCPA was intended to prevent – including that the consumer will forfeit "the ultimate power vis-à-vis debt collectors: the power to demand the cessation of all collection activities." *Evans v. Portfolio Recovery Assocs.*, LLC, 889 F.3d 337, 348 (7th Cir. 2018), *quoting Brady v. Credit Recovery Co.*, 160 F.3d 64, 67 (1st Cir. 1998); *see also* 15 U.S.C. § 1692e(2)(a); *Boucher v. Fin. Sys. of Green Bay,* 880 F.3d 362, 368 (7th Cir. 2018); *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 684 (7th Cir. 2017) (risk of payment resetting the statute of limitations); *Larkin v. Fin. Sys. of Green Bay Inc.,* No. 18-C-496, 2018 U.S. Dist. LEXIS 191305 (E.D. Wis. Nov. 8, 2018) (plaintiff had standing for her claim that creditor misrepresented that it maintained a credit rating for the plaintiff, even when the claim failed on the merits"); *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector [that the debt collector is licensed as a debt collector in Wisconsin] has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'"); (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS

7

177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes

creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

38. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. § 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

39. Misrepresentations of the character, amount or legal status of any debt, or that abridge consumers rights with respect to raising a dispute, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Smith v. GC Servs. Ltd. P'ship*, 907 F.3d 495, 498 (7th Cir. 2018) (affirming district court's finding that consumer had standing to sue with respect to the debt collection letter purporting to require disputes raised under 15 U.S.C. § 1692g(a)(3) to be made in writing); *Degroot v. Client Servs.*, 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress

9

gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

40. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

41. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

42. 15 U.S.C. § 1692g(b), among other things, provides: "Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

### *The WCA*

43. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

44. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country,"

and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

47. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stat. § 427.104.

45. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* Wis. Stat. §§ 425.301 through 425.311.

46. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

47. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stat. § 427.104.

48. The Act expressly authorizes injunctive or declaratory relief, authorizing individual actions to enjoin "any person who in making, soliciting or enforcing consumer credit transactions engages in . . . making or enforcing unconscionable terms or provisions of consumer credit transactions or false, misleading, deceptive, or unconscionable conduct in inducing customers to enter into consumer credit transactions." Wis. Stat. § 426.110(1) and (2).

49. The WCA also authorizes "any customer affected by a violation of chs. 421 to 427 and 429 . . . or by a violation of the federal consumer credit protection act . . . [to] bring a civil action on behalf of all persons similarly situated, for actual damages by reason of such conduct or violation, together with penalties as provided in sub. (14), reasonable attorney fees

11

and other relief to which such persons are entitled under chs. 421 to 427 and 429." Wis. Stat. § 426.110(1).

50. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stat. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stat. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

51. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

52. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing Gammon v. GC Servs. Ltd. P'ship, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

53. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

## COUNT I – FDCPA

54. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

12

55. Exhibits A & B state that the consumer must dispute the debt in writing to prevent the debt collector from assuming its validity.

56. Exhibits A & B are deceptive, misleading, and confusing to the unsophisticated consumer, and are inconsistent with the consumer's right to dispute the debt by phone.

57. Defendant violated 15 U.S.C. §§ 1692e, and 1692e(10), 1692g(a)(3), and 1692g(b).

## COUNT I – WCA

58. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

59. Exhibit A states that the consumer must dispute the debt in writing to prevent the debt collector from assuming its validity.

60. Exhibits A & B thus indicate the debt collector has the right to assume the debt is valid if the consumer disputes the debt by telephone.

61. Exhibits A & B therefore claim a right that the debt collector knows or has reason to know does not exist.

62. Defendant violated Wis. Stat. §§ 426.110(2) and 427.104(1)(j).

## CLASS ALLEGATIONS

63. Plaintiffs bring this action on behalf of a class, consisting of: (a) all natural persons in the State of Wisconsin, (b) who were sent an initial collection letter in the form represented by Exhibit A and/or Exhibit B to the complaint in this action, (c) seeking to collect a debt, incurred for personal, family, or household purposes, (d) between January 30, 2019 and January 30, 2020, inclusive (e) that was not returned by the postal service.

64. The class is so numerous that joinder is impracticable.

65. Upon information and belief, there are more than 50 class members.

66. There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether <u>Exhibit A</u> and/or <u>Exhibit B</u> violate the FDCPA.

67. Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

68. Plaintiffs will fairly and adequately represent the interests of the class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

69. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

70. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: January 30, 2020

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)

14

3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com

15